THE FARMERS & MECHANICS' BANK *v.* J. K. DRURY AND THE MISSISQUOI BANK.

[IN CHANCERY.]

*Mortgage. Deed. Delivery. Acceptance. Agency.*

On the 27th of May, 1861, D. executed a mortgage deed of certain property to the Missisquoi Bank to secure his indebtedness to said bank, and sent the same by B. to the town clerk's office to be recorded, with the intention that this would be a delivery of the deed, and sent E. to inform the officers of the bank of the execution of the deed, and where they would find it, as they did not know of its execution at the time, and were not present. On the 29th of the same month, and after said deed had been recorded, and E. had notified the cashier of said bank of what D. had done, to which the cashier replied he was glad of it, D executed another mortgage deed of the same property to the Farmers & Mechanics' Bank to secure his indebtedness to them, which deed·was delivered to said bank, and recorded in the town clerk's office before the deed to the Missisquoi Bank was actually received into their possession, which was not until the 31st of May. *Held,* that the deed from D. to the Missisquoi Bank was so delivered and accepted as to convey title before the Farmers & Mechanics' Bank obtained their deed.

PETITION for foreclosure of a mortgage. The bill states that Jacob K. Drury, on the 29th day of May, A. D. 1861, duly executed to the petitioners a mortgage deed of certain described land situated in the town of Essex, in the county of Chittenden, conditioned for the payment of the sum of all and every sum Drury then owed the petitioners, whether as acceptor or drawer, as well as all amounts that Drury then owed them for loans, discounts, or otherwise, whether overdue then or·thereafter to mature; and that Drury then owed the petitioners three described bills of exchange, on which payment had been demanded and refused, and Drury duly notified thereof; and that Drury at the time of the execution of said mortgage deed, owed the petitioners the further sum of $4000. for so much money before that time loaned and advanced by said bank to Drury; all which sums and amounts were due and had not been paid, nor any part thereof; and that on the 27th day of May, 1861, Drury made his mortgage deed of the same land and store described and mortgaged to the petitioners, to the Missisquoi Bank, to secure to said bank the payment of Drury's liabilities thereto, but did not deliver said last named mortgage deed to the Missisquoi Bank, or any person authorized to *receive* the same, until the 31st day of said May, and

after the petitioners had received and caused to be recorded in the land records of the town of Essex, the mortgage deed first named ; that the Missisquoi Bank now pretends to hold a lien upon said mortgaged premises for the payment of a large sum of money owing to said bank by Drury, wherefore the petitioners pray that the equity of redemption of the said J. K. Drury and Missisquoi Bank in the premises may be foreclosed.

The Missisquoi Bank in answer stated that on the 27th day of May, 1861, Jacob K. Drury was owing large sums to said bank, and being in insolvent and failing circumstances, for the sole purpose of securing the payment of the same, in good faith and in due form of law, executed to said bank the mortgage deed as stated in the petition, of the premises described in the petition, and of certain other real estate also, conditioned to secure the payment to said bank of all such sums of money, &c. And that Drury, on the same day caused the said mortgage deed to be delivered to the town clerk of Essex for this defendant, and to be duly recorded in the office of the town clerk of Essex, for the benefit of this defendant.

And this defendant admitted that it was not present at the execution of the last mentioned mortgage deed, and that the same was not actually delivered to any officer, in person, of this defendant's corporation, until after the deed had been so recorded in said town clerk's office ; but said that if it had been present where said deed was executed, it would have accepted the same ; that as soon as it learned of the execution of said deed, and on the same 27th day of May, this defendant fully ratified and confirmed the execution and the delivery of it to the town clerk ; and that on the 31st day of May, 1861, this defendant actually received the said deed from the town clerk (who had kept it for this defendant) for the purpose for which it was executed, and has so held it ever since.

This defendant further alleged that at the time of the execution of the mortgage deed from Drury to the petitioners, the existence of Drury's indebtedness and liability to this defendant, and of the mortgage deed from Drury to this defendant, and the record thereof, were fully known to the petitioners ; and that before and at the time Drury executed the mortgage to the petitioners, it was expressly agreed and understood between Drury and the director and agent of

---

---

said Farmers & Mechanics' Bank, who acted on behalf of said bank in obtaining said deed, that said deed was not to operate to the prejudice in any way, of the rights or interests of this defendant under said mortgage, nor in any manner interfere with the security afforded or intended to be afforded to this defendant by said mortgage deed to it; but that the mortgage to the petitioners should only operate to create a lien in favor of the petitioners subsequent and subservient to the mortgage to this defendant. And this defendant insisted that the mortgage from Drury to this defendant was legally valid and operative from the time of its delivery to the town clerk for this defendant. That if it was not so until actually received from the town clerk by this defendant, still that the circumstances and arrangement under which the petitioners obtained their mortgage, gave this defendant a prior and superior lien upon said mortgage premises for the security of this defendant's claims against Drury, and that the petitioners are not entitled to a decree of foreclosure against this defendant. Answer was not sworn to.

Salmon Wires, director and attorney of the Farmers and Mechanics' Bank, a witness on the part of the petitioners, testified, among other things, to the amount of Drury's indebtedness to the Farmers and Mechanics' Bank on the 29th of May, 1861, and that on that day he told Drury that if the mortgage to the Missisquoi Bank, marked A., was not defective, a mortgage to the Farmers and Mechanics' Bank would do the Missisquoi Bank no harm, and the Farmers and Mechanics' Bank could hold it in preference to any other creditor; and he thereupon assented to the giving of the mortgage deed marked "C." which was the deed to the Farmers and Mechanics' Bank of May 29th, 1861. There was no agreement or understanding at that time or any other, that the deed given to the Farmers and Mechanics' Bank was to be subject to the one given to the Missisquoi Bank, but the claim of the Farmers and Mechanics' Bank was to depend upon the validity of the execution and delivery of the deed to the Missisquoi Bank.

Jacob K. Drury, a witness called by the Missisquoi Bank, testified in substance that he gave the mortgage deed marked C. to the Farmers and Mechanics' Bank for the purpose of giving them security for his indebtedness to them, on the property mortgaged, subject

to his mortgage, marked A., to the Missisquoi Bank, but with no intention that it should take priority to the latter mortgage, or prejudice the security of the Missisquoi Bank under the mortgage to it.

Henry G. Edson, a witness called on the part of the defendants, testified as follows: " I drew the mortgage marked "A," and saw it executed. At the time of the execution of the mortgage, Mr. Drury requested me to notify the Missisquoi Bank of its execution; and either on the same day or the next day—I am not certain, but my strong impression is that it was the same day—I saw Homer G. Hubbell, the cashier of the Missisquoi Bank, at St. Albans. I told him, Mr. Hubbell, that Mr. Drury had been at my office, and had failed, and that he had executed a mortgage to secure them, and that the mortgage had been sent by Mr. Beach to the clerk's office in Essex, to be put on record. I told Mr. Hubbell what property he had mortgaged to the bank. Mr. Hubbell's reply was that he was glad it had been done, and thought with some notes the Missisquoi Bank held that they would be safe. I was employed by Mr. Drury to make the mortgage. No officer or agent of the Missisquoi Bank was present at the time of the making and execution of the deed to it. I took the deeds and numbered them in the order in which they were to go on record, and put them into an envelop and gave them to Mr. Beach and told him to give them to the Essex town clerk for record, to be recorded in the order in which they were numbered."

On trial the following facts were treated as agreed upon and admitted :

1. When mortgage "A" was by Drury's directions, delivered to Beach to be carried to the town clerk's office for record, as testified by Edson, it was Drury's intention to part with all control over the mortgage, and that it should take immediate effect in favor of the Missisquoi Bank.

2. That on the 31st day of May, 1861, and after the mortgage had been duly recorded in the office of the town clerk of Essex, Homer E. Hubbell, the Vice President of the Missisquoi Bank and one of its directors, acting for and in behalf of the bank, received the mortgage from the town clerk, intending that the bank should hold it as a valid security for its debt against Drury, and that as such it has ever since been held by the bank. Prior to May 31st,

1861, there was no other delivery of mortgage "C" than is disclosed by the testimony and the foregoing agreed statement of facts. *Provided*, that if the court shall be of opinion that it would be incompetent at this stage of the case for the Missisquoi Bank to introduce the testimony of Drury to show the facts stated in paragraph 1, then these facts are to be laid out of the case.

3. Mortgage "C" was duly delivered to the petitioners and left at the town clerk's office in Essex for record by them on the 29th of May, 1861, and was there duly recorded.

*Wm. G. Shaw*, for the orators.

*E. R. Hard*, for the Missisquoi Bank, cited to the point that an unconditional delivery of a deed by the grantor, even to a stranger, for the grantee, with the intention on the part of the grantor, to part with all control over the deed, and to have it take immediate effect in favor of the grantee, is a sufficient delivery, and the deed thereupon becomes operative, unless afterwards rejected by the grantee. 2 Wash. on R. P. 609, 10, 11, 12; 4 Greenl. Cr. on R. P. 42, (note;) *Doe v, Knight*, 5 B. & C. 671; *Exton* v. *Scott*, 6 Sim. 31; *Alford* v. *Lee*, Cro. Eliz. 54; *Wankford* v. *Wankford*, 1 Salk. 299; *Canning* v. *Packham*, 1 N. H. 353; *Buffum* v. *Green*, 5 N. H. 71; *Cook* v. *Brown*, 34 N. H. 460; *Hatch* v. *Hatch*, 9 Mass, 307; *Wheelwright* v. *Wheelwright*, 2 ib. 447; *Souverbye* v. *Arden*, 1 Johns. Ch. 225; *Merrillo* v. *Swift*, 18 Conn. 257; *Morse* v. *Slason*, 13 Vt. 296; *Lindsay* v. *Lindsay*, 11 Vt. 621; *McCourt* v. *Myers*, 8 Wis. 236; *Concord Bank* v. *Bellis*, 10 Cush. 278; 20 N. H. 140.

The opinion of the court was delivered by

STEELE, J. The question is whether the deed "A" from Drury to the Missisquoi Bank had been so delivered and accepted as to convey title before the orators obtained their deed.

I. We are satisfied, and it seems to be agreed, that when Drury sent the deed marked "A" by Mr. Beach to the town clerk's to be recorded he intended to deliver it. What the effect of this would be alone we do not decide. If, in addition to this, Mr. Drury had employed Beach to proceed directly from the town clerk's to the Missisquoi Bank to inform the officers of the bank of the execution of the deed and of the place where they would find it, and the information had been given, it would hardly be claimed that anything remained to be done

Farmers and Mechanics' Bank *v.* Drury et al.

on Drury's part to make the delivery complete. It cannot vary, the case that one person was not employed by Drury to do all this—that Mr. Beach was sent with the deed to the recorder and Mr. Edson with the message to the bank. Both of the agents, Mr. Beach and Mr. Edson, not only received but executed their commissions before the orators obtained their deed,—and the deed in question was before that time in the hands of a third person under such circumstances as to clearly indicate that the grantor had parted with it for the benefit of the grantee with no intention of retaining farther control over it. By the strictest rule of the conflicting decisions the grantor had done all that was requisite on his part. (*a.*)

II. Did anything remain to be done by the grantee to perfect the conveyance? Whether a special act of acceptance is necessary to render operative a deed entirely beneficial to the grantee and whether the title may not pass by the acceptance of the custody of the deed for the grantee by an unauthorized stranger without any further act (*b.*) are questions not fairly involved in this case. The cashier of the defendant bank on receiving the information from Mr. Edson said "he was glad it was done." This was all the acceptance he could make, and as the officer charged with the collection of the debts due the bank, an acceptance of such an additional security was quite within the scope of his authority.

We therefore think the orator's deed of this land, which was executed subsequently by Drury, must be held subordinate to the deed in question, and in this view a decision of the other questions is not required.

Decree affirmed and cause remanded to the court of chancery to be perfected.

(*a.*) See cases collected 2 Wash. R. P. 609 et seq.; 2 Green. Cruise p. 334-5, note

(*b.*) *Doe* v. *Knight,* 5 Barn. & Cres. 692; *Tompkins* v. *Wheeler,* 14 Curtis U. S (16 Pet.) 206.